## No. 2326.—JOSEPH BARRERE v. LOUIS BARTET.

The city of New Orleans has absolute and plenary control of the disposition of the markets. of the city. The purchaser of a stall from the farmer of a market is not bound in warranty to his vendee in case of eviction or disturbance by the city itself.

An action in damages will not therefore lie against the vendor of a stall in the market in case the vendee has been disturbed by the city.

**A**PPEAL from the Seventh District Court, parish of Orleans. *Collens*, J. *Sambola & Ducros*, for plaintiff and appellee. *E. Filleul.* and *A. Cazabat*, for defendant and appellant.

HOWELL, J. The plaintiff avers that in March, 1867, he purchased from the defendant the right of use, occupancy and enjoyment of two butcher's stalls in the St. Mary's market, in New Orleans, at the price of $900, and with the express condition that the defendant, who was then occupying a small stall adjoining one of those sold, should not sell beef at said stall; but that in violation of said agreement he has continued to sell beef at said stall to the great injury of plaintiff; that in violation of his obligations in warranty defendant obtained, in.

Barrere v. Bartet.

October, 1868, the passage of a resolution by the Common Council of the city of New Orleans authorizing the closing of a passage or empty space between the stalls of plaintiff and defendant, and afterwards caused said passage to be closed, thereby evicting plaintiff from the possession of one of his stalls and seriously diminishing the value and enjoyment of the other, and he prays that the said sale be annulled and defendant condemned to refund the price ($900) and pay damages to the amount of $600.

The defense is a general denial, with the averment that the said market belongs to the city of New Orleans, which controls the same as it pleases.

Judgment was rendered in favor of plaintiff dissolving the sale, ordering defendant to take back the two stalls sold, restore the price ($900) and pay $300 damages, from which defendant appealed.

Several witnesses testify that the defendant made the stipulation not to sell beef on the stand occupied by him, but he states as a witness that such a condition was not suggested until after the sale was completed, and he did not consent to it, but continued his business without interruption. Be this as it may, we apprehend that after plaintiff's silence from March, 1867, to January, 1869, he can not successfully urge this, if true, as a cause for annulling the sale and recovering damages without showing a clear right in law and fact to such a recourse upon defendant. The serious ground of complaint seems to be the closing of the passage or empty space between the stalls of the respective parties, by which the joint use or occupancy of the two stalls of plaintiff was made inconvenient. The property of the market is in the city, and the right to collect the daily revenues or rent, fixed by the city, of the various stalls and stands from the occupants is sold at public auction, the purchaser being called the "farmer" or lessee of the market, whose consent is necessary for the occupancy of every stall, and who has the right to dispossess any occupant upon failure for one day to pay the dues. The size, dimensions and number of the stalls, and the general management of the markets, are under the control of the city, one regulation being "that the 'farmer' shall return to the city the stands, stalls, and other appurtenances thereto belonging, in the same good order and condition as when received."

In September, 1868, the "farmer" and the defendant applied to the City Council for the privilege of closing the empty space in question, which, after a reference of the matter to the surveyor, was granted. A remonstrance was presented to the Council by the plaintiff, but the action of the Council remained unchanged, leaving the matter to the farmer upon the recommendation of a committee, to whom the subject was referred. After the passage was closed both plaintiff and defendant insisted upon using the addition, and the dispute between them

was decided by the city surveyor, the proper officer, in favor of the defendant, whereupon this suit was originated.

We are unable to see any legal responsibility on the part of defendant towards plaintiff for any damage which may have resulted to the latter by this change in the condition of these stalls. The defendant had no such property in them when he made the sale as to make him liable for any change affecting their use or convenience, even though he may have petitioned for such a change. It is a matter for the city to regulate in behalf of the public interests. It does not appear to us that the lessees or occupants of the stalls are the warrantors of the possession or profits of those to whom they may sell their own rights to the occupancy of the stalls. They of course warrant against their own acts which may interfere with the enjoyment of what they sell. But the act complained of here was the act of a public authority, for which defendant was not responsible. The City Council was not bound to authorize the change because defendant petitioned for it, nor do we see anything in the relation between defendant as vendor and plaintiff as vendee of what was really sold in this instance inconsistent with defendant's legal right to join with the "farmer of the market" in making the petition for the change. The plaintiff's tenure is only from day to day, conditioned on his punctual payment of the daily dues to the farmer, and not dependent in any degree on the warranty of the defendant, and the city, so far as the rights of the plaintiff and defendant are concerned, can make any change deemed necessary, or even close the market, provided the use for any day paid for by these parties is not molested.

It is therefore ordered that the judgment appealed from be reversed and that there be judgment in favor of defendant with costs in both courts.

Rehearing refused.